Daniel, J.
I do not perceive any ground for the objection made to the authentication of the copies of the statutes of the state of Ohio, filed by the appellee Lazier. The act of congress, approved March 27, 1804, declares that all records and exemplifications of office books, which may be kept in any public office of any state, not appertaining to a court, shall be proved or admitted in any other court or office in any other state, by the attestation of the keeper of said records or books, and the seal of his office thereto annexed, if there be a seal, together with a certificate of the presiding justice of the county or district in which such office may be kept; or of the governor, the secretary of state, the chancellor, or the keeper of *481 the great seal of the state, that the said attestation is in due form, and by the proper officer. And if the said certificate be given by the governor, the secretary of state, the chancellor or keeper of the great seal, it shall be under the great seal of the state in which the said certificate is made. Story’s Laws of the U. S. vol. 2, 947-8. And we have the certificate of the secretary of state of the state of Ohio, under the great seal of the state, stating that the said acts “ are correctly copied from the original rolls now on file in this (his) office.”
From this certificate it appears that the secretary of state is himself also the keeper of the rolls. If the offices had been separate, his- certificate of the attestation of the keeper of the rolls would, plainly, under the provisions' of the- law, have been sufficient, without any additional certificate by the governor. I do not see how the fact that he happens to hold both offices, detracts at all from the efficacy of his certificate as secretary of state.
By the first section of the first of the above mentioned acts, all bonds, promissory notes, bills of exchange, foreign or inland, drawn for any sum or sums of money certain, and made payable to any person, or order, .&c., .are placed on the footing of negotiable paper. The note for two thousand one hundred and eighty-seven dollars and fifty cents is dated “ Marietta.” In the deed from Lector to Mills and Wilson, of the 29th of September 1837, the two latter are described as of Marietta, Washington county, Ohio. And the witness Murdock in his deposition states that he has been acquainted with Wilson for some ten years, and during that time, had .always understood that his residence was in the town .of Marietta in the state of Ohio. The evidence is, therefore, I think, ample to show that the note was .executed in Ohio *482 and by the laws of that state, as we have seen, it stands on the footing of a negotiable instrument.
Such being the lex loci contractus, the note must be treated as negotiable paper here: For it seems to be well settled that a negotiable note, made in a particular country, is to be deemed a note governed by the law of that country, whether it is expressly made payable there or is payable generally, without naming any particular place; since at most, under the latter circumstances, it is as much payable in that country as elsewhere. Hence such a note makes the malter liable only according to the law of the country where the note is executed, although endorsed in another country; and his liabilities, and so also his rights; as for example, the right to set up equitable defenses against the note, if allowed by the country where the note is executed, are regulated by the law of the same country. Story on Promissory Notes, § 172.
. Lazier must be presumed to be prima facie a holder for value. Story on Promissory Notes, § 196. “ The owner of a bill is entitled to recover upon it, if he came to it honestly; that fact is implied, prima facie, by possession; and to meet the inference so raised, fraud, felony or some such matter, must be proved.” Extract from the Opinion of Lord Denman in Arbouin v. Anderson, 1 Ad. & Ellis N. R. 498, 504, 41 Eng. C. L. R. 642, cited in note to foregoing section. Vathir v. Zane, 6 Gratt. 266, opinion of Allen, J. Upon the supposition, however, that the establishment of want or failure of the consideration would make it incumbent upon the holder to show that he had given value for the note, no such matter is established here as against Lazier. In his answer, he denies all knowledge whatever of the transactions between Wilson and Rector. He avers that he is an innocent purchaser for a full, fair and valuable consideration, without any notice whatever of any equity, want of con *483 sideration, or any other fact or circumstance connected with the note, until some time after he had purchased. The statements in the bill, and the admissions in the answer of Rector as to the contract on which the note was founded, furnish no proof against Lazier. As to him there seems to be the entire absence of any competent evidence to show what was the origin of the note.
Even, however, if there were evidence competent and plenary, as against Lazier, to show a failure of the consideration of the note, I should still hold that he was not bound to prove that he paid value for it. There is no evidence of fraud in the origin or negotia-j tion of the note; and the mere failure of consideration! does not impose on the innocent holder the onus of' showing the consideration he gave for the note. In a / note to Chitty on Bills, 10th American edition, p. 648, we have a report of the case of Whitaker v. Edmonds, 1 Mood. & Rob. 366. In that case, Patterson, judge, said, “ Since the decision of Heath v. Sansom, 2 Bar. & Adol. 291, 22 Eng. C. L. R. 78, the consideration of the judges has been a good deal called to the subject; and the prevalent opinion among them is, that the courts have of late gone too far in restricting the negotiability of bills and notes. If indeed the defendant can show that there has been something of fraud in the previous steps of the transfer of the instrument, that throws upon the plaintiff the necessity of showing under what circumstances he became possessed of it. So far, I accede to the case of Heath v. Sansom; for there were in that case circumstances raising a suspicion of fraud: but if I added on that occasion, that even independently of those circumstances of suspicion, the holder would have been bound to show the consideration which he gave for the bill, merely because there was an absence of consideration as between the. *484 previous parties to the bill, I am now decidedly of opinion that such doctrine was incorrect.”
And in Knight v. Pugh, 4 Watts & Sergeant 445, the authorities are fully examined and reviewed, and the rule stated to be, that in a suit against the maker, by an endorsee, the plaintiff cannot be called upon to prove that he paid value for the note, until the defendant has shown it was obtained or put in circulation by fraud or undue means. In the opinion of Sergeant, judge, it is conceded that the rule at one time obtained of allowing the defendant on proving that he received no consideration, to call upon the plaintiff to show the consideration he gave for the note; but he proceeds to show that the latest authorities exclude want of consideration in the note or subsequent failure, from the class of cases in which the defendant may call on the plaintiff to prove the consideration he paid. See Low v. Chifney, 27 Eng. C. L. R. 383.
There is nothing in Vathir v. Zane, 6 Gratt. 246, decided by the court, or intimated by any of the judges in conflict with these authorities. The proposition there decided, is, that when fraud in the procurement of the note is averred and proved, the maker has brought himself within the exception to the general rule; that the onus probandi is then shifted, and •thrown on the holder to show he has paid value.
In this view of the law the exclusion of the declarations of Wright and Baldwin, in reference to the transfer •of the note, could not affect the case, so far as Lazier is concerned, no ground being laid for requiring him to prove what consideration he paid for the note. The eourt below has therefore, I think, very properly-refused any relief against the note in the hands of Lazier.
As between the maker and the payee-of the note, however, the want of consideration or subsequent *485 failure is a proper defense, and the equities between them are not lost or destroyed by the transfer of the note: As between Wilson and Rector, the testimony is ample to show that there has been an entire failure of the consideration for which the note was given, the whole of the land in payment of the purchase money of which it was executed, having been absorbed by a paramount incumbrance.
In this state of things the principles decided in the cases of Dade's adm'r v. Madison, 5 Leigh 401, and Pettit v. Jennings, 2 Rob. R. 676, would seem fully to sanction such a decree as has been rendered by the Circuit court in favor of Wilson against Rector. In the first mentioned case, an order was drawn by Dade on Madison in favor of Tankersly, and accepted by Madison. Tankersly having obtained a judgment at law on the order against Madison, the latter enjoined the judgment, on the ground that the order and acceptance were founded on a gaming consideration. Dade, in his answer, admitted that the order was drawn by him for money which he had won of Madison at cards; and he said that Tankersly was apprised of the consideration and took the order at his own risk. Tankersly denied all knowledge of the transactions between Dade and Madison, in consideration of which the order was drawn; averred that he had given Dade an adequate valuable consideration for it; and that Madison accepted it without hesitation or objection, and had obtained indulgence from time to time, on promise of payment. There was no evidence as between Madison and Tankersly to establish that the order was founded on a gaming consideration, unless the answer of Dade could be used against Tankersly.
This court held that the answer of Dade was no evidence against Tankersly; and there being a failure to show, by any testimony competent, as against him, *486 that there was any vice in the consideration of the order, Tankersly was permitted to execute his judgment against Madison. But the court also held that the Circuit court had properly rendered a decree over in favor of Madison against Dade, of which Madison should be permitted to avail himself as soon as he satisfied the judgment in favor of Tankersly.
In the second case, (Pettit v. Jennings,) the same principles were reaffirmed. In an injunction suit by the obligor in a gaming security against the obligee and an assignee, the gaming consideration was admitted by the obligee in his answer, but there was no competent proof against the assignee. The assignee was permitted to recover, but the obligor was indemnified by a decree over against the obligee. The grounds for such relief are forcibly stated by Judge Baldwin in his opinion. “ When a failure of proof (he says) as to the assignee on a supervening equity between him and the obligor, induces a court of equity to enforce the security in behalf of the assignee, or, what is in effect the same, to suffer it to be enforced; then the court ought to proceed, if the subject and parties be properly before it, to administer the justice of the case as between the obligor and the obligee. The latter having by his contract of assignment appropriated to himself the avails of the security, and being enabled to retain them, by the act of the court, which relieves him incidentally from all responsibility to his assignee, the result is, when the security shall have been enforced against the obligor, that the obligee has obtained from him in substance, though not in form, by means of a compulsory proceeding, satisfaction of a debt destitute of consideration, and denounced by the law : but the subject and the parties are still before the court, and I am at a loss to conceive upon what principle the court can refuse *487 redress to the obligor against the obligee.” So here, the whole foundation on which the note rested, having been swept away by an entire failure of the consideration, it was a worthless paper, and liable to be canceled so long as it remained in the hands of Rector. By means of his transfer, and of the transfers of others claiming under him, the note has reached the hands of one who, from considerations of commercial policy favoring the negotiability and circulation of such instruments, is allowed, under the circumstances, to enforce it against the maker as a valid security. But Rector has thereby acquired no advantage which can avail him in a court of equity. Having voluntarily placed it out of his power to cancel the note, he is bound, in equity and good conscience, to place Wilson, as nearly as may be, in the position he occupied before the note was endorsed away. The measure of the indemnity is the amount that Wilson is bound to pay to Lazier, viz: the principal and interest of the note.
The decree in favor of Wilson against Rector is, therefore, I think, clearly right; but the court lias, it seems to me, stopped short of giving to Wilson the whole relief to which he is entitled. It is alleged in the bill that Rector assigned or endorsed the note to the trustees of Rector college, without consideration; that he made a donation of said note to the college; and that the said trustees had transferred the note to Lazier. They have not answered, and the bill as to them has been taken as confessed; and from the deed executed by the trustees on the 11th November 1839, styling themselves Trustees of the Western Virginia Education Society, it is recited that Rector transferred the note to the said trustees; and that they, for the purpose of raising funds to erect the necessary buildings of said society, sold and transferred the said note *488 to James D. "Wright and David Baldwin, and that Wright and Baldwin subsequently sold and transferred it to Lazier: And the said deed conveys property for the purpose of indemnifying and securing Lazier, in the event that he should fail, after using due diligence, to recover the debt from Wilson and Rector.
The want or failure of consideration in the note may be insisted upon as a defense, not only between the original parties to the contract, but also between the maker and one who claims under the payee without having given value for the note. Story on Promissory Notes, § 190. If the note were now in the possession of the society, they would have nothing to plead against its cancellation. The presumption which has stood to Lazier in the place of proof, and protected him as a Iona fide holder for value, cannot he invoked by the society. They have not denied the positive allegation of the bill, that they acquired the note by donation. They have, by their own admission, sold and transferred the note, and have placed their endorsee in a position to enforce it. If permitted to retain the purchase money of the note to the prejudice of Wilson, they will in substance and effect have coerced him to pay to them the amount of a note against which, as between him and them, -he had a valid defense. They may have parted with the note, and most probably did part with it, without any knowledge of the defect or failure in the consideration. But they gave nothing for the note, and -to the extent that they have received value for it, they are in the receipt of money which they had no right, in equity, to collect. They- are holding funds to which another in foro conscientice has a-better right. Rector is alleged and proved to be insolvent. The decree over against him will, therefore, in all probability, prove unavailing. In such an event, I do not,perceive upon *489 what grounds of equity his voluntary donee can claim to hold the funds which have been realized, in effect, by the collection of an instrument wholly void of consideration.
It seems to me that the society, in such a state of things, is bound to hand over to Wilson whatever they may have received as the price of the transfer of the note.
Upon the whole, I think the decree is right in all things except in dismissing the bill as to the Western Virginia education society. I am, therefore, for affirming the decree, so far as it refuses to relieve Wilson against the note in the hands of Lazier, and gives him a decree over against Rector -, but for reversing, so far as it dismisses the bill against the society, and for remanding the cause for further proceedings with liberty to Wilson, on paying the amount of the note and interest to Lazier and on showing that the decree against Rector has proved unavailing, to apply for and have a decree against the society for the amount that they received as the price of the' note, with its interest.
The other judges concurred in- the opinion of Daniel, J.
The decree was as follows:
The court'is of the opinion that the appellee Lazier ought to be regarded as the Iona fide, endorsee for value of the note for two thousand one hundred and eighty-seven dollars and fifty cents, in the bill and proceedings mentioned, without notice of the failure of the consideration for which it was given, and that the said note, as between the said Lazier and the maker, the appellant Wilson, is a valid instrument, liable to be enforced against the said Wilson.
The court is further of opinion, that the testimony *490 in the cause is competent and plenary to show, as between the said Wilson and the appellee Rector, that the consideration of the said note has entirely failed ; and that if Rector still held it, it would be liable to be canceled at the suit of the said Wilson.
The court is further of opinion, that as the said Rector has endorsed the note and placed it in the power of his remote endorsee, the said Lazier, to enforce it as a valid instrument against the said Wilson, he is bound in equity to indemnify the latter by paying to him the principal and interest of the said note, whenever he the said Wilson shall have paid the same to the said Lazier..
The court is further of opinion, that as the trustees of Rector college obtained the said note from the said Rector, without 'having paid value therefor, and by way of donation from the said Rector, and have endorsed the same for a valuable consideration; and have by means of the said endorsement and of the subsequent endorsement of their endorsees, Wright and Baldwin, enabled Lazier to enforce the note against the said Wilson, the said Wilson has a right in equity, on showing that he has paid the same, and that he is unable to obtain the indemnity against the said Rector to which he is entitled, by reason of the insolvency of the latter, to recover of the said trustees -of Rector-college the price of their transfer of said'uote, with its interest.
The court is, therefore, of opinion to affirm the whole of the decree, except so much thereof as dismisses the bill against the said college, with costs to the said Lazier,- and to reverse so much as dismisses the bill against the said college, with costs to the plaintiff in error against said college; and to remand the cause for further proceedings, with liberty to the said Wilson, on showing that he has paid the principal *491 and interest of the said note to the said Lazier, and that the decree in his favor against Rector has proved unavailing, to ask for and have a decree against the said trustees of Rector college for so much as they received from their endorsees Wright and Baldwin, as the price of them endorsement of said note to the latter.
Upon the application of the said Wilson to have the decree aforesaid, the trustees of the college may, if they can, show that they received less for their transfer than the nominal value of the said note; and in such event, the decree will be for such smaller sum, with its interest. But in case they fail to furnish such proof, the decree must be for such nominal value, and its interest.